UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BANK OF AMERICA, NATIONAL
ASSOCIATION, AS SUCCESSOR BY MERGER
TO LASALLE BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE
REGISTERED HOLDERS OF J.P. MORGAN
CHASE COMMERCIAL MORTGAGE
SECURITIES TRUST 2007-LDP 11,
COMMERCIAL MORTGAGE PASSTHROUGH
CERTIFICATES SERIES 2007-LDP 11,    **MEMORANDUM & ORDER**

                Plaintiff    Civil Action No. 10-0025

    -against-

JAY R. VIDERS,
                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**McCarter & English, LLP**
Attorneys for Plaintiff
245 Park Avenue, 27th Floor
New York, New York 10167
By:    Eduardo J. Glas

**Michael M. Premisler, Esq.**
Attorney for Defendants
One Old Country Road - Suite 360
Carle Place, New York 11514

**HURLEY, Senior District Judge:**

       Plaintiff Bank of America, as Trustee, ("Lender") commenced this action against

defendant Jay R. Viders ("Viders") asserting a claim for breach of a Master Lease Agreement.

Presently before the Court is Lender's motion for summary judgment and Viders' cross- motion

to stay pending arbitration. For the reasons set forth below, Lender's motion is granted in part

and the cross-motion is denied.

**Factual Background**

The following facts are undisputed unless otherwise noted.[1]

The Loan to Commack

On or about March 26, 2007, Commack Properties LLC ("Commack") borrowed from AIG Mortgage Capital LLC (the "Original Lender"), the principal amount of $5,000,000 (the "Loan"), for the financing related to certain property owned by Commack and located at 366-368 Veterans Memorial Highway, Commack, New York (the "Property"). To evidence the Loan, Commack executed a Promissory Note dated March 26, 2007. As security for the Loan, Commack executed and delivered to the Original Lender a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture filing (the "Mortgage"), dated March 26, 2007, and recorded in the real estate records of Suffolk County on April 27, 2007. Also in connection with the Loan, Viders, Commack and Original Lender executed an Agreement concerning the Master Lease.

---

[1] Local Rule of Civil Procedure 56.1 of the U.S. District Court for the Eastern District of New York ("Rule 56.1") requires parties moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to admissible evidence in the record supporting each such fact. *See* Local Rule 56.1(a), (d). Where, as here, the opponent then fails to controvert the facts set forth in the movant's Rule 56.1 statement or fails to cite evidence to supporting the controverting of a statement of material fact, those facts will be deemed admitted so long as supported by the admissible evidence — although they will not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001).

The Assignment of the Loan

The Mortgage, Note and other documents related to the Loan were thereafter assigned to other entities. It is undisputed that Lender is the present holder of these documents.

Commack's Default

Under the terms of the Loan, Commack is required to pay per month $29,900.00 in principal and interest plus approximately $13,500 per month to cover insurance and taxes. Commack is presently in default under the terms of the Loan by, among other things, failing to make timely payments. Commack failed to make monthly payments in July, August, and September 2009. In October 2009, Commack remitted approximately $43,500 and thereafter remitted approximately $13,600 each month form November 2009 to February 2010. The defaults have not been cured and the Lender has accelerated all sums due under the Loan. Despite demand for payment, Commack has failed to pay all sums due under the Loan. The principal balance outstanding and due immediately under the Loan is at least $4,985,769.25 as of November 2009.

The Master Lease and Agreement Concerning Master Lease

On or about March 26, 2007, Original Lender, Commack and Viders entered into an Agreement concerning the Master Lease (the "ML Agreement"). As set forth therein, Commack and Viders were required to enter into a Master Lease as a condition precedent to the making of the loan. (ML Agreement Recital "C".) The ML Agreement provides that Lender "shall grant its consent to a full and complete release of the Master Lease" upon the satisfaction of 8 conditions. (ML Agreement §5(a).) Those conditions include, among other things, that (1) Commack shall

have completed all improvements or renovations under replacement leases approved by Lender with respect to any portion of the space included in the Master Lease ("Approved Leases") and has delivered the demised premises to the tenants under Approved Leases; (2) no Default or Event of Default as defined by the Mortgage[2] shall have occurred or be continuing; (3) the term of each Approved Lease is at least thirty-six months; (4) the Property is at least ninety-five percent occupied pursuant to leases approved by Lender; and (5) the average rent for all leases entered into (a) with respect to the Master Lease Space and (b) after the date of the ML Agreement, is $24.00 per square foot over their respective terms on a modified square foot basis. The ML Agreement also provides that notwithstanding the provisions of the Master Lease, Viders shall not be required to make payments under the Master Lease unless and until an Event of Default has occurred. In such event, Commack is required to pay to Lender and Viders agrees to pay to Lender all amount to be paid by Viders under the Master Lease.

Under the terms of the Master Lease, dated February 14, 2007, Commack leased to Viders "an office consisting of 4,376 square feet in the building known as 368 Veterans Highway, Commack . . . ." The Master Lease is for a fifteen year term commencing on March 15, 2007, with an annual rent of $105,024.00 for the base year, thereafter to be increased each year in an amount equal to three (3%) of the prior year's rent. In addition, Viders is required under the Master Lease to pay for his electrical consumption which is to be measured by a direct

---

[2] The ML Agreement provides that capitalized terms used therein without definition shall have the meanings given to such terms in the Mortgage. The Mortgage defines an "event of default" to include, among other thing, that "any portion of the Debt is not paid when due or any other amount due under section 2 [of the Mortgage] is not paid in full on each Payment Date." (Mortgage ¶10 at p. 35.)

meter or sub-meter to the demised premises. (*Id.* at ¶37.)[3]

The Foreclosure Action

Lender has also commenced a foreclosure action in this Court as against Commack and Viders. *See* Civil Action No. 09-5296 (the "Foreclosure Action"). By Memorandum and Order dated December 9, 2010, the Court granted Lender's motion for summary judgment on the foreclosure claim asserted in the Foreclosure Action and denied a cross-motion by the defendants therein to stay the matter pending arbitration.

**Discussion**

**I.      Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[3] Lender contends that Viders is also responsible to pay as additional rent his pro rata share of expenses of the building. Lender does not direct the Court's attention to any particular paragraph of the Master Lease to support that assertion and the Court has been unable to find any such provision although Viders admits such an obligation in his 56.1 Statement. Parenthetically, the Court notes that the ML Agreement makes reference to the Master Lease containing such an obligation on the part of Viders.

242, 248 (1986); *see SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See SCR Joint Venture*, 559 F.3d at 137; *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the

affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

## II. The Parties' Contentions

Lender contends that it is entitled to summary judgment as there are no material issues of facts and the undisputed facts show that Viders is obligated by reason of an event of default under the terms of the Mortgage to make payments under the Master Lease in accordance with the terms of ML Agreement. Viders opposes the motion arguing that (1) the 4,376 square feet leased by him under the Master lease is rented and continues to be rented and so long as someone is paying rent for this specific space, he in not in default; (2) 95% of the Property has been rented since shortly after the loan closed and therefore the Master Lease has terminated; and (3) this matter is subject to an arbitration clause and therefore the case should be stayed pending arbitration.

## III. Lender is Entitled to Summary Judgment on Liability

"The elements of a breach of contract claim in New York are (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC*, 156 Fed. Appx. 349, 2005 WL 3076885 (2dCir. Nov. 17, 2005) (Summary Order) (citing *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). *Accord First Investors Corp. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir. 1998). The undisputed facts establish each of these elements.

First, there is no dispute as to the existence of the "contract," - i.e. the ML Agreement and the Master Lease. Nor is there is any dispute that Lender performed its obligations. Under the ML Agreement, Lender was to loan Commack in the maximum principal amount of

$5,000,000.00, which it did. Thus, the first two elements have been satisfied.

The undisputed facts also establish Viders' non-performance. Under the ML Agreement Viders, Viders agreed to pay to Lender all amounts to be paid by him under the Master Lease if there was an Event of Default. Events of Default occurred (*see* n. 2 *supra*) when Commack failed to make monthly payments in July, August, and September 2009. Thus, under the terms of the ML Agreement, when Commack failed to make the monthly payment due July 2009, Viders was obligated to commence paying to Lender the payments set forth in the Master Lease. There is no dispute that Viders has made no payments.

Viders seeks to avoid summary judgment by arguing that once he rented the 4,376 square feet referenced in the Master Lease and the ML Agreement his obligations to Lender ended. His argument is contrary to the clear, express terms of the ML Agreement. Under the ML Agreement, Viders was obligated to pay rent under the Master Lease upon an Event of Default. Further, he was released from his obligations under the Master Lease only upon the fulfillment of certain conditions. Those conditions do not include that there is a tenant in the specific 4,376 square feet. Moreover, the Master Lease provides that Viders is obligated to pay the specified rent "without any setoff or deduction whatsoever . . . ." (Master Lease at p.1.)

Nor does Viders claim that 95% of the Property is leased raise an issue of fact precluding summary judgment in favor of Lender. First, Viders has submitted no evidence to support that assertion.[4] Second, assuming arguendo that 95% of the Property was leased at some point,

---

[4] The Court notes that Lender has submitted the rent rolls for the Property as of December 31, 2007 and December 31, 2008 which indicated that more than 5% of the Property was unoccupied as of those dates.

Viders is still obligated under the terms of the ML Agreement. As set forth above, under the terms of the ML Agreement, Viders was to be released from his obligations under the Master Lease upon the fulfillment of eight conditions. The leasing of 95% of the Property was only one of those conditions and Viders makes no claim that the other conditions for release of his obligations were met.

Viders also contends that summary judgment should be denied because this matter is subject to an arbitration. As noted earlier, a motion was made to stay the Foreclosure Action and denied by Memorandum and Order dated December 9, 2010. By stipulation dated June 4, 2010, Lender and Viders have agreed that the Court's ruling on the arbitration issue in the Foreclosure Action will binding herein. Accordingly, for the reasons set forth in the Court's December 9, 2010 Memorandum & Order in the Foreclosure Action, the Court holds that the instant matter is not subject to arbitration and denies Viders' cross-motion.

Finally, there is no dispute that Lender has been damaged as a result of the breach as it has not received the amounts due. There is, however, a question as to the exact amount due from Viders.[5] Accordingly, while summary judgment shall be granted as to liability, the matter of the amount due shall be referred to the Magistrate Judge assigned to this matter for Report and Recommendation.

---

[5] Lender submits that the amount owed in rent is $122,097.62 as of June 30, 2010, not including Viders' share of expenses and attorneys' fees and that the judgment should be entered now for $122,097.62, with leave to amend once the expenses and fees can be calculated. Given that no affidavit has been submitted regarding the calculation of the $122,097.62 and the admittedly open question as to the amount of expenses and fees to be included in the judgment, the Court deems it appropriate to refer the matter of damages to the Judge Lindsay.

**Conclusion**

Lender's motion for summary judgement is granted on liability. Viders' cross- motion is denied. This matter is hereby respectfully referred to Magistrate Judge Lindsay pursuant to 28 U.S.C. § 636(b) to determine the amount of damages, including attorneys' fees. Further, the scope of the foregoing reference shall be deemed to encompass such additional authority as reasonable or necessary to perform the foregoing duties and as is not inconsistent with the Constitution and laws of the United States.

**SO ORDERED.**

Dated: Central Islip, New York
December 28, 2010

/s/
Denis. R. Hurley
Senior District Judge